## Case No. 18,249.

### CHARGE TO GRAND JURY.

[1 Curt. 509; 2 Liv. Law Mag. 427.]

Circuit Court, D. Rhode Island. Nov. 15, 1853.

SEAMEN — FLOGGING—ACT ABOLISHING—SHIPPING—VESSELS OF COMMERCE—CONSTITUTIONAL LAW—WHALE FISHERIES.

[1. Whale fishing is a branch of the commerce of the United States, and is therefore under the exclusive control of congress by virtue of its constitutional right to regulate commerce.]

[2. Congress, by act of September 28, 1850 (9 Stat. 515), in a clause thereof enacted: "Provided that flogging in the navy, and on board vessels of commerce, be, and the same hereby is, abolished." Held, that "vessels of commerce" include vessels engaged in whale and other fisheries.]

[3. "Flogging," as practiced in the navy and merchant marine, has acquired a certain recognized meaning, viz., punishment by stripes inflicted by a cat o' nine tails or other instrument capable of inflicting the same kind of punishment. Therefore the abolition "of flogging" does not prohibit corporal punishment of a different kind administered by officers of vessels to compel obedience to lawful commands or to preserve the discipline and good order of the ship.]

Extract from the charge of Mr. Justice CURTIS to the grand jury, concerning the law of corporal punishment in the merchant service.

CURTIS, Circuit Justice (charging grand jury). The regulation of the rights and duties of merchant seamen is an important subject of the criminal laws of the United States. The power to regulate commerce with foreign nations, and among the general states, conferred by the constitution on congress, includes the power to prescribe rules for the government of persons engaged in such commerce. And from a very early period in the history of the government, congress has passed criminal laws on this subject. One of those laws, which, more frequently perhaps than any other criminal law, comes under the notice of the courts of the United States, is an act passed on the third day of March, 1835 [4 Stat. 775], which is in the following words: "If any master or other officer of any American ship or vessel, on the high seas, or on any other waters within the admiralty and maritime jurisdiction of the United States, shall, from malice, hatred, or revenge, and without justifiable cause, beat, wound, or imprison any one or more of the crew of such ship or vessel, or withhold from them suitable food and nourishment, or inflict upon them any cruel or unusual punishment, every such person, so offending, shall, on conviction thereof, be punished by fine, not exceeding one thousand dollars, or by imprisonment, not exceeding five years, or by both, according to the nature and aggravation of the offence." By a series of adjudications, and by frequent practice, this law has acquired a settled meaning. And I should not deem it necessary to give you any special instructions concerning it, if more recent legislation by congress had not given rise to grave doubts and difficulties concerning its present effect. To convey to your minds what these doubts and difficulties are, and to supply a solution of them, it is necessary for me to begin by explaining what is the effect of this act standing by itself.

You will observe, then, that three things are required to constitute an offence under this law: (1) That the master, or other officer of a vessel of the United States, should beat, wound, or imprison one of the crew, or withhold from him suitable food and nourishment, or inflict on him some cruel or unusual punishment. (2) That either of these should be done without justifiable cause. (3) That the motive of such act of the master or officer should be malice, hatred, or revenge.

At the time this law was enacted, the master of an American vessel was intrusted by the law with the power to inflict punishment on the crew, and to use force to compel obedience to his lawful commands; and to preserve the discipline and good order of the ship. This law, the terms of which I have repeated to you, was not intended to restrain the proper exercise of that authority, but merely to prevent its abuse. And, therefore, it requires the government to prove, not only that punishment was inflicted, but that it was without justifiable cause. That is, that there was no offence calling for punishment, or no occasion to use force, or that the force used, or the punishment inflicted, was immoderate and disproportioned to the offence. And it also required that the act should be the product, not of mistake or erroneous judgment, but of malice; that is, of an evil intention. In other words, that it should be an intentional departure from a known duty. Under this law, therefore, when it had been proved that the master had inflicted corporal punishment on one of the crew, inasmuch as in some circumstances he had the right so to punish, the government was obliged to show, not only that the circumstances of the

particular case were such that the right did not exist, but that they were such that the master must be taken to have known that it did not exist, and acted in disregard of what he knew to be his duty.

In September, 1850 (9 Stat. 515), there was inserted in an appropriate bill, passed by congress, this clause: "Provided that flogging in the navy, and on board vessels of commerce, be, and the same hereby is, abolished, from and after the passage of this act." It is to be regretted that what we are bound to presume were the necessities of the case, did not permit congress, in dealing with a subject of so much practical importance, to be more explicit in declaring its intention; and that, consequently, the powers and rights of masters and seamen, engaged in the merchant service, are involved in doubts which can be finally removed only by further legislation, or at the expense of much time and money, and no small suffering by many persons. To remove some of those doubts, so far as may be in my power, by an exposition of what I deem to be the legal effect of this clause, is my present purpose. In the first place, then, what is meant by the words "vessels of commerce." So far as I am aware, these words are here used for the first time to describe a class of vessels. The phrases found in other laws are, "any American ship or vessel," "any vessel belonging in whole or in part to any citizens or citizen of the United States," or other equivalent terms. And the argument which may be derived from this departure from the use of these usual words is, that if congress had intended to embrace every vessel belonging to a citizen or citizens of the United States, or every American vessel, the act would have said so; and that, instead of doing so, it restricts the operation of the law to one kind of vessels only, that is to say, vessels of commerce; and that vessels employed only in the fisheries, are not vessels of commerce; that they are recognized by the legislation of congress as engaged in a distinct business, viz. in the capture of whales and the taking of fish, and are under restrictions and requirements, and are entitled to privileges, which are not attached to other vessels, whose business it is to carry on the intercourse and traffic of the commercial world.

It must be admitted that this argument is entitled to no small weight; and I believe the opinion that vessels engaged in the fisheries are not within this law, is entertained by some, though I do not know that it has been yet announced in any judicial decision. The great and increasing number of persons employed on board vessels engaged in the whale fishery, the length of many of their voyages, the large proportion of green hands, unaccustomed to the necessary subordination of the service, its frequent emergencies, and great hazards, the terms of the contract, by which all participate in the disappointments as well as the successes of the voyage, and in some places, there is too much reason to believe, the unfair practices which have been used to obtain men,—all combine to render it extremely important that the lawful powers of the master to inflict punishment on the crew of such a vessel, should be clearly defined. I believe it is within the experience of all who are accustomed to administer the criminal laws of the United States, in the districts constituting this circuit, from whence mainly, this fishery is prosecuted, that there is no class of vessels, in respect to which it is so necessary that the relative rights and duties of officers and seamen should be settled and known; or in respect to which doubts upon important points would work so much mischief. I have therefore given to this question the consideration which it demands, and my opinion is, that by this law it was intended by congress to embrace vessels engaged in the whale and other fisheries, under the words "vessels of commerce;" and I will state briefly the reasons which have brought me to this conclusion. In the first place, I do not perceive any sufficient reasons why masters of fishing vessels should continue to possess the power to inflict the punishment of flogging, when it is taken away from all others. If, as we are bound to presume, there was a mischief to be remedied, I cannot find any firm ground upon which it can be asserted, that fishing vessels were not within that mischief. There are differences, undoubtedly, between the ordinary merchant service and the persons engaged in it, and the fisheries and those who carry them on. But if those differences are such as to render this power more necessary in whaling than in merchant voyages, they clearly render its existence less necessary in the other fisheries, in which, from the character of those employed, and the nature and terms of their enterprises, an occasion to inflict such punishment is, happily, extremely rare. And if we consider the purpose of the law to have been, to abolish this mode of punishment, because of its effects upon those subjected to it, those engaged in the fisheries, so far as I can see, have an equal claim to be protected from these effects. And, therefore, if the words, "vessels of commerce," can be fairly interpreted so as to include vessels engaged in the whale and other fisheries, I feel it to be my duty so to interpret them.

From a very early period in the history of the government, congress has regulated the vessels and the persons employed in the fisheries. Their national importance was well understood when the constitution was adopted. Their rights and privileges had formed a prominent subject of the negotiations for peace with Great Britain, and hold an important place in the treaty of 1783 [8 Stat. 80]. And they have at all times been treated as a subject of legislation within the constitutional powers of congress. Yet there is no clause of the constitution, conferring that power on congress, except this: Congress shall have power "to regulate commerce with foreign nations, and among the several states." It is clear, then, that unless the fisheries were a branch of the commerce of the United States, congress would not have power to regulate them; a power which, so far as I know, has never been questioned, and certainly has been exercised so long, and in so many forms, that it must now be deemed to be beyond dispute. Nor does there seem to be any real difficulty in considering the fisheries as one branch of commerce. It has been said, by high authority, that the term commerce, though it includes traffic, is not limited to the buying and selling of commodities. It includes also intercourse; and therefore, a vessel which merely transports passengers from one country to another, is engaged in commerce, and is under the regulating power of congress. So it includes the mere transportation of commodities; and a vessel which carries commodities for hire, though the master or owners neither buy nor sell any thing, is engaged in commerce. Now, though whaleships are engaged in capturing whales, and in manufacturing their oil, they are also engaged in transporting that commodity across the ocean, for sale on its arrival here. They not only transport from without the United States, one of the commodities of commerce, but that commodity is brought into the United States, and is sold for the account of those employed in the voyage and owning the vessel. In the strictest sense, therefore, such vessels are engaged in commerce, and may be called, though it is in legislation a new phrase, vessels of commerce. In this sense, I consider congress used the words; intending to embrace in them all vessels within the commercial power of congress.

The next inquiry is, what is meant by the word "flogging?" It is applied to the navy and to vessels of commerce. The words are "flogging in the navy and in vessels of commerce." They plainly refer to, and are intended to identi-

fy, some one known mode of punishment theretofore lawfully practised, and which was thereafter to be prohibited. And inasmuch as it is the duty of the court to construe the statute, and inform the jury what it means, when it speaks of the punishment of flogging, I must be able to find, somewhere in the law, written or unwritten, a definition of the punishment of flogging, theretofore lawful and by this law prohibited. Otherwise it would be wholly out of my power to give any interpretation to these words. Now, the punishment of flogging in the navy was a known and lawful mode of punishment, when this law was enacted. The instrument by which it was inflicted, and the number of blows which could be ordered without a court-martial, are described in the rules and articles for the government of the navy, enacted by congress. It may be added, that it was the only lawful mode of inflicting corporal chastisement recognized by those rules and articles. It was corporal punishment, by stripes, with what is called in the articles, a cat o' nine tails. This is the only mode of punishment prohibited in terms by the law of 1850. But it must be taken to have prohibited it, not in this precise form only, but in substance and effect. Its prohibition is directed not against a particular form of punishment merely, but against any punishment which in substance and effect is the same as that mentioned. The form of the instrument may be varied, while substantially the same effects are produced. And here, I think, the prohibition stops. I see no safe ground upon which it can be carried further. The law does not abolish all corporal punishment. It is plainly restricted to one particular mode of inflicting corporal punishment, described in this law, as the punishment of flogging in the navy and in vessels of commerce, and defined in the act of congress for the government of the navy. And consequently, whenever a case arises, in which corporal punishment has been inflicted, the first inquiry must be, was it the punishment of flogging within the meaning of this law? in other words, was it, in substance and effect, punishment by stripes inflicted with a cat o' nine tails, or other instrument capable of inflicting the same kind of punishment? If not, the case is to be determined irrespective of this law. I am fully aware of the distressing uncertainty in which this subject is thus left. But it is an uncertainty which can be removed only by legislation. Having put upon the law the only interpretation which its language seems to me to admit of, if it is found to have left open much debatable ground, in a matter where plain and clear rules are especially necessary, it belongs to the power which makes, and not to that which administers the law, to prescribe these rules One practical effect of this uncertainty is worthy of your especial notice, as it bears on the performance of your duties. I have already informed you that, in proceeding against a master under the law of 1835, the government must not only prove a beating or wounding, but want of justifiable cause, and malice. Now, if a case should arise, and certainly such cases are likely to arise, in which the beating was, in your judgment, in substance and effect the punishment of flogging, then you must find there was not justifiable cause, however atrocious the conduct of the seaman may have been; while, at the same time, you may be of opinion, that the master honestly thought it was not the punishment of flogging, but some other corporal punishment within his lawful power to inflict, and so did not act in disregard of a known duty, and therefore did not commit the offence described in the statute.

Before I leave this subject, I think it proper to call your attention to an important distinction, between punishment and the use of force to compel obedience to a lawful order. The necessities of the service require of the crew prompt obedience to the orders of the master, or other commanding officer. These necessities are such, that it is often inconsistent with the general safety to permit delay or hesitation. In all such cases, the master, or other officer in command has the right to compel obedience by the use of the necessary force. He also has the right, and it is his duty, to interpose to quell all affrays between the officers and men, and especially all forcible resistance to his lawful commands. And he may and should use that degree of force in doing so, which the occasion renders apparently necessary. I say apparently necessary, because all that can reasonably be required of the master so interposing is, that he should act with as much coolness and judgment as are ordinarily possessed by masters of vessels, and should honestly endeavor to do his duty. Such occasions do not permit the degree of force necessary to be used, to be very exactly measured, or the necessity itself to be estimated with the same precision which those judging after the event, with time for deliberation, and a more full knowledge of the facts, might find possible. This law, abolishing the punishment of flogging, does not affect either of these last mentioned powers of the master. They exist now, and are to be governed by the same rules as before that law was passed.

I have only to add, in conclusion, on this topic, that the act of 1850 is not a penal law. It may, as I have explained to you, have an important effect upon the questions of justifiable cause and malice, on the trial of indictments under the act of 1835, and also in civil suits for damages; but it describes no offence, and enacts no penalty; and therefore is not one of the criminal laws of the United States, and no indictment can be framed upon it.