UNITED STATES v. TRICE.

*(District Court, W. D. Tennessee. March 15, 1887.)*

1. CRIMINAL LAW—MALTREATMENT OF CREW OF VESSEL—REV. ST. U. S. § 5347 —"OFFICER."

Any one who by authority exercises the function of control over the actions of the crew, or any part of it, by giving direction to their work, is an "officer," within the meaning of the Revised Statutes of the United States, § 5347, and is liable to the penalty if he beat or wound one of the crew.

2. SAME—CASE IN JUDGMENT—"CAPTAIN OF THE WATCH."

Where the roustabouts belonging to the crew of a steam-boat are divided into watches, and one of their number is set over them as "captain of the watch," with power to direct their work and demand obedience to his orders, *held,* that he is an officer within the meaning of the statute. (Rev. St. U. S. § 5347,) and may be held to answer a charge of beating and wounding one of the crew so placed under his command.

On *Habeas Corpus.*

*H. C. Anderson,* Asst. U. S. Atty., for the United States.

*H. C. Warinner,* for defendant.

HAMMOND, J. The defendant having been held to bail by a commissioner to answer for a violation of section 5347 of the Revised Statutes of the United States, application was made to the district judge for a warrant of removal to another district for trial, but, there being much doubt whether the facts brought his offense within the statute, counsel was assigned to him, and, by agreement with the district attorney, the matter was heard as if upon *habeas corpus.* *U. S.* v. *Brawner,* 7 Fed. Rep. 86; *In re James,* 18 Fed. Rep. 853, 854.

The defendant is one of the colored "roustabouts" or deckhands engaged on steam-boats to do the work of loading, unloading, etc. He is charged with "beating and wounding" one of the crew, another "roustabout," contrary to the provisions of that statute. He is what is known in that service as a "captain of the watch," and it is by reason of that relation that

he is charged as an officer, and as being, therefore, amenable to the penalty of the statute, which enacts that "every master *or other officer* of any American vessel," etc., "who beats, wounds," etc., "shall be punished," etc. Rev. St. U. S. § 5347. It seems that this "captain of the watch" is a kind of foreman or overseer, who, under the supervision of the mate, has charge of one of the two "watches" into which the crew is divided for the convenience of work, each having a "captain" in charge. He calls them "out" and "in," directs them where to store freights, which packages to move, when to go "aboard" or come "ashore," and generally directs their work; or, to state it in the language of defendant's counsel:

"It is the practice of the mates to select one member of each watch to act as the head or chief of that watch. Ordinarily he is so selected because of his supposed experience in such business, and his fitness to intelligently guide and direct his watch in the performance of their duty. His wages are generally those of any experienced 'rouster,' and he is classed and paid as a 'rouster.' Among his duties are to call out his watch when needed, put them at work according to directions of the mate on watch, guide them in receiving, storing, and delivering cargo; or, in other words, to give his aid and attention to systematize the labor of the crew, he himself ordinarily performing a part of the duties required of his watch. He is not known or recognized as an officer by steam-boat owners, but performs his duty in obedience to orders and directions given, as occasion requires, by the mate, is subject to his orders as any other 'rouster' is, and may be called by the mate to perform any duty that a 'rouster' may be called to perform. The crew look upon him, probably, as practically occupying a superior or *quasi* superior position over his watch."

This fairly represents the testimony as to the functions of the "captain of the watch," and the question is, does the statute apply to a person occupying such a position?

It is conceded that this statute was not intended to punish fighting or other assaults committed by the crew upon each other, in which respect it is different from the British act passed in the same year, and about the same time, with the same general purpose, which provided for the summary punishment of "common assaults on shipboard," (2 McCul. Dict. tit. "Seaman," 442;) and, this being so, there is a wide margin for interpretation, whether we look at the lexicographical expressions that may be used to represent the meaning of the words in dispute, the technical terminology they employ, and the judicial definitions that have been attempted in other connections, or seek the more contracted mischief to be prevented than the punishment of *all* beating and wounding on shipboard, by confining the statute to the suppression only of the abuse of authority; for I take it that whatever may be said of the effect of section 4611 of the Revised Statutes of the United States, abolishing flogging, passed many years later, it was not the intention of *this* statute to curtail the lawful authority of the master or other officer in charge of the ship to inflict reasonable corporal punishment. And when, in our search for the real mischief congress had in mind to remedy, we turn to an examination of the master's authority in that regard, we find that in fact only the master, and not any other officer whatever, except when the master

was not on board and some other exercised his powers, had any right to strike or punish in any other way, one of the crew. Whoever inflicted the punishment, be it by one blow or more, or by some other kind of punishment, could only do that by order of the master, specifically given. One exception there was to this, and that was that the mate or other officer in charge of the particular business might, by a single blow, stimulate instant and prompt obedience in the performance of a given act, which could not await an application or complaint to the master. Of course, I do not consider here the niceties of this very interesting subject, nor attempt to express the full nature or extent of the master's powers, nor any of its limitations through the right of sanctuary in the prow of a vessel or a further retreat, after which, even as against the master, the seaman pursued might strike his pursuer without incurring the barbaric penalties for striking an officer, as the general statement above made is sufficient for the present purpose. 2 Browne, Civil & Adm. Law. 160; 1 Conk. Adm. (2d Ed.) 427–448; *U. S.* v. *Taylor,* 2 Sum. 585–588; *Fuller* v. *Colby,* 3 Woodb. & M. 1; *U. S.* v. *Freeman,* 4 Mason, 511; *U. S.* v. *Collins,* 2 Curt. 194.

Now, in view of this condition of the law, that only the master could punish or had authority to strike, and of the conceded fact that it was not intended by this statute to denounce *all* beating on shipboard, it would not be an unreasonable construction of the words "or other officer," as used in the section, to hold that they were intended to designate some one substituted for the master, and exercising his powers in his absence, so that the section would read, that "every master, or other officer exercising his powers, who beats," etc., "shall be punished," etc.; thus confining the statute to the prosecution of an abuse of his *official authority* by the *commander* of the vessel, and leaving all other misconduct by the master or other officer where the common assaults among the crew are left, to be otherwise redressed, outside of this statute. As, if the master and one of the crew should fall out over a game of cards, and the master should "beat" and "wound" the other, he would not be guilty under this act, the affair not being within the scope of his official conduct *qua* master; so, if any but the master, or one acting as master, should "beat" or wound another, he would not be liable, no matter what other relation might exist, or what might be the occasion of the beating; and looking to the phraseology of the statute about "imprisoning" and "withholding suitable food," and "inflicting cruel and unusual punishment," etc., describing clearly a commander's acts, and belonging only to the master, or one acting in his place as such, there is great force in this interpretation as the one that meets the technical requirements of statutory construction.

This being a penal statute, I should not hesitate to adopt that construction but for a conviction that congress did not really intend to so narrowly limit the remedial effects of this beneficial act. The common interpretation of the words used go further than that; the evil then existing extended beyond that, and the general scope of the legislation which had preceded this act demanded more than this interpretation would im-

ply. Congress, as the English parliament, had been long engaged in supplying something of a code of laws of the sea, intended to advance commerce, but more to nurture able-bodied and efficient seamen, for use when needed in time of war; and the general purpose was to mitigate the rigors of sea-service, and make it more attractive, by protecting the seamen from personal injury. These injuries were not inflicted alone by the master, as such, as they generally were in the beginning, when the above-mentioned powers and duties of the master were established. Then he was not much removed in social position from the rest of the crew, worked among and was in constant contact with them, great as was his authority. Afterwards the master became less a part of the crew, and had become, when this act was passed, and has since far more become, separated from such duties, which are now mostly devolved on under-officers who control the men while he exercises only a general supervision, until now the master of a vessel is more like a naval commander of a ship than like the old-time master. Congress no doubt had in view this modern style of sea-service and that of our lakes and rivers, to which the act applies, where the master does not beat his crew but leaves it to the mates and "captains of the watch," and did not have in view the ancient laws, upon which this narrow construction is based.

· The learned counsel for the defendant has not contended for the narrowest construction, but does insist that the words "or other officer" must be limited to the recognized *officers* of a vessel, as known to the service, calling attention to the differences between ocean navigation and that of our rivers; yet, if we get away from the interpretation already noticed, there is no guide in the technical rules of construction that direct us to the meaning of the words used in their relation to the subject-matter. The word "officer" is very elastic. As applied to the military establishments of the army and navy, it would be more definite, perhaps, and somewhat so as applied to the civil establishments, where there are certain *indicia* of authority to point them out; but we have only to look through adjudicated cases to see that, as used in statutes, the term often cannot be so confined. And even by common understanding in the army and the navy, as well as the civil service, there are distinctions, social, technical and arbitrary, that frequently influence the judicial determination of statutory and other administrative regulations. The marine service on board ships and steam-boats furnishes fewer of the usual *indicia* of interpretation, or of the intention to be implied from the mere use of the words, than these others, for the obvious reason that the offices are *private* in their origin and characteristics, and the duties attached are altogether arbitrary, in every respect whatever. Each owner of a vessel may establish any and what officers he pleases, call them as he will, and distribute the service and duties as he may choose, and the rank and social relations may be what any one may wish who has the power to regulate the subject. Custom very largely, no doubt, and to some extent legal or statutory regulations, may enter into the particular organization as a controlling influence; but, giving these all the consideration possible, and the fact remains that substantially the organization of the ship's company is arbi-

trary, and the owner may make it quite at his will, particularly below the master. He must have engineers, pilots, etc., no doubt; but whether these shall be "officers" who have social rank and distinction as such on board, or be only part of the "seamen," the "crew," or the "men," etc., is purely discretionary with the owner, or, at most, regulated by arbitrary custom among themselves.

Learned counsel cite from the books which name the "officers" of a ship as "master, mate, boatswain, surgeon, pilot, and supercargo;" or as "master, pilot, carpenter, carabita, purser, cook, and harbor watchman;" or as "master, mates, pilot, boatswain, coxswain," etc.; and "surgeon, purser, cook, steward, cabin-boy, carpenter, cooper, engineers, and firemen." Jac. Sea Laws, 120–128; Fland. Shipp. 33; Curt. Seam. 3–6; 1 Conk. Adm. 107. But, as counsel say, these are rather subdivisions according to the duties performed, or classifications of the marines into those who are common seamen and those who hold inferior official positions, or do not belong to the essentially maritime classes at all, than the designation of the recognized *officers* of a vessel. Manifestly, these designations would not furnish any criterion for the interpretation of this statute, and just as plainly, as it seems to me, will any other recognized classification or ranking fail to meet the requirements of this statute. Certainly, there can be none based on the *social* distinctions which would be satisfactory. Why should a pilot, for example, who, away from the wheel, has control of nobody, be amenable to this statute because he is recognized as an "officer," eats with the captain, and associates with him, while the steward, who beats and wounds a cabin-boy under his control, escapes because he is not recognized as an officer and does not associate with the captain?

The primary signification of the word "officer" will include this "captain of the watch," and it is often used in that primary sense in statutes, and is by judicial construction extended to include like positions. One of the earliest definitions of the word "*officium*" is "that function by virtue whereof a man hath some employment in the affairs of another, as of the king or another person." Cowell, Dict. *h. t.* Again: "It is said that the word '*officium*' principally implies a duty, and, in the next place, the charge of such duty; and that it is a rule that where a man hath to do with another's affairs against his will, and without his leave, that this is an *office*, and he who is in it an *officer*." *King* v. *Dr. Burnell*, Carth. 478; 4 Jac. Dict. 433, tit. "Office;" 2 Toml. Dict. 664; 2 Abb. Dict. 200.

In *Stone* v. *U. S.*, 3 Ct. Cl. 260, a foreman of laborers at work upon the public grounds was held to be employed "in his office," in relation to an appropriation for those employed "in his office" by the commissioner in charge; and in *Com.* v. *Wyman*, 8 Metc. 247, a statute punishing for embezzlement "the cashier or other officer" was held to include all above and below that officer who "are within the mischief intended to be prevented." Many other cases might be cited, but these are sufficient; and it would seem that the judicial definition always conforms to an enlarged or restricted interpretation, according to circum-

stances, the reasonable rule being to give that effect to the act which it shall appear from the words used, and the object to be accomplished,. that the legislature wished should be done.    Nor is the rule of strict construction for penal acts against this method of interpretation.    *U. S.* v. *Hartwell*, 6 Wall. 385, 396; *U. S.* v. *Mattock*, 2 Sawy. 148, 151; *The Bolina*, 1 Gall. 76, 83; *U. S.* v. *Winn*, 3 Sum. 209.    In the last case cited Mr. Justice STORY construed this very statute, and, upon similar reasoning to that I have used, held that the chief officer next below the captain or master was under the protection of the statute as one of the "crew."

Upon the whole, I am satisfied that any one who by authority exercises the function of command over the actions of the crew while on duty, or of any of them, is an officer *pro hac vice*, and liable to the penalties of this statute, as such, if he violate its provisions.    So construed, the statute secures the purpose of congress to protect the seamen or "rousters," and all on board who, being of the crew, are under the bondage of obedience to authority, from any abuse of that authority; while the more restricted construction would permit the evil to continue by allowing the "officers" to delegate the beating and wounding to underlings having all the power of official place, with the right to exercise it, and yet no responsibility such as this statute imposes.    None but the master ever had the power to punish, or has now, but if any assume it by virtue of his office, be that office what it may, thereby he becomes, to all intents and purposes of this statute, amenable to all the penal consequences, if he abuse that power which he assumes.

The defendant will be held to answer.