## DORRELL v. SCHWERMAN.

(District Court, E. D. Wisconsin. August 26, 1901.)

1. SEAMAN—AUTHORITY OF MASTER OVER.

The master of a vessel is strictly accountable to those under him, both criminally and civilly, for wanton injury inflicted upon them, or oppressive and unreasonable treatment; but he is necessarily vested with great authority, which it is his right and duty to exercise in the maintenance of discipline, and will be protected in the exercise of such authority, even to the extent of inflicting corporal punishment on a subordinate, where the circumstances are such as to justify it, and he acts from proper motives and in a reasonable manner.

2. SAME—ACTION AGAINST MASTER FOR ASSAULT—EVIDENCE CONSIDERED.

Evidence considered, and held insufficient to sustain a libel filed against the master of a steamer by the steward to recover damages for personal injuries alleged to have resulted from an unprovoked assault made upon him by the master.

In Admiralty. Libel in personam by a seaman against the master of the steamer Burnham to recover damages for an alleged assault by the master on board the steamer while on her voyage upon Lake Michigan.

McCabe & Dahlman, for libelant.

Max C. Krause, for defendant.

SEAMAN, District Judge. The libelant was in the service of the steamer Burnham as steward or cook, and avers in his libel that the master committed an unprovoked assault upon him while on the voyage to Chicago, whereby he received serious physical injuries, resulting in permanent paralysis. The fact of his present paralyzed condition is undisputed, and the fact of a prior altercation with the master on shipboard, with some corporal hurt, is equally undisputed; but the libelant's version of the circumstances of the conflict and extent and manner of the force used is supported by his testimony alone, while it is directly controverted by the master in every feature on which the cause of action depends, and the master's version is corroborated in important particulars by other witnesses, especially by three of the crew who claim to have been present during parts of the occurrence. Nevertheless the duty of the court is to sift the evidence of this unseemly transaction on shipboard, and ascertain so far as possible whether the true preponderance is or is not with the libelant; whether his claim is sustained in the light of the circumstances which are either conceded or appear by credible testimony, with just allowance for the interests or relations of the witnesses.

As the libelant was in the relation of mariner, he was during such service subject to the authority vested in the master of the steamer. The rule as to this authority is thus stated by Kent (3 Kent, Comm. 131), and frequently approved by the courts: "Being responsible over to others for his conduct as master, the law, as well on that account as from the necessity of the case, has intrusted him with great authority over the mariners on board. Such authority is required for the safe navigation of the ship and the preservation of

good order and discipline. He may imprison and also inflict reasonable corporal punishment upon a seaman for disobedience to his reasonable commands, or for disorderly, riotous, or insolent conduct; and his authority in that respect is analogous to that of a master on land over his apprentice or scholar." Although punishment by flogging, as formerly sanctioned, was abolished by statute in 1850 (Rev. St. § 4611), it has been held that such provision does not curtail the authority of the master in other respects under the rule above stated, even as to "reasonable corporal punishment," if otherwise justifiable under the circumstances. Mr. Justice Curtis in Charge to Grand Jury, 1 Curt. 509, Fed. Cas. No. 18,249; U. S. v. Trice (D. C.) 30 Fed. 490; 2 Pars. Shipp. & Adm. 90. At the same time the master is strictly accountable to those under him for oppressive and unreasonable treatment, and if he inflicts or causes wanton injury his liability is both criminal and civil. It is of the utmost importance in cases of this nature to preserve the line of distinction between the exercise of just authority and oppressive conduct. As aptly remarked by Chief Justice Taney in Dinsman v. Wilkes, 12 How. 390, 403, 13 L. Ed. 1036, in reference to like complaint arising in the naval service, it is essential to the security and efficiency of the service "that the authority and command confided to the officer, when it has been exercised from proper motives, should be firmly supported in the courts of justice as well as on shipboard," but it cannot be permitted "that the humblest individual in the service be oppressed and injured by his commanding officer, from malice or ill will, or the wantonness of power, without giving him redress in the courts of justice." In the case at bar these facts are clearly established: The libelant was an old man, and had been in the service of the steamer about two months as steward and cook. During that time he had under him successively four boys as "second cooks," with whom he quarreled to such extent that it became necessary to discharge one after the other, and in some instances they were so intimidated by his treatment on the trip that one of the deck hands was substituted by the mate as a temporary assistant. In those instances the libelant used abusive and threatening language, and the witnesses mention him as "very cranky" and as using intoxicating liquors at times, although there is no direct proof of actual intoxication. About two weeks prior to the difficulty in question, the master had directed him to clean up his kitchen, to which the libelant made sullen response, but complied with the order, and subsequently exhibited to the mate his anger over this "interference," with threat that he would "stick his fork through that mullhead captain if he comes back here and interferes with my business." This threat was reported by the mate to the master, with a warning that "the steward is sore on you for some reason." On the occasion in controversy the steamer was on her trip from Racine to Chicago, and the master, in passing aft in the course of duty, to go down to the engine room, found the libelant seated on a stool, smoking, with his feet upon the after rail, and in such position that the passageway to the stairs was entirely blocked. The testimony is undisputed that the libelant either refused or neglected to move or change his position

to allow the master to pass when the latter appeared and gave notice of such purpose, so that the master pushed by, removing the man's feet from the rail, with no unseemly violence and no hurt. The only material dispute at this point is in reference to the immediate conduct of each when the way was thus cleared, and incidentally whether the libelant was then under the influence of liquor. The libelant testifies that he remained seated after his feet were pushed off the rail, until the master turned and "commenced to jaw" him, and he then "went to get up," and was "tackled and choked" by the master and thrown against an ice box and the rail; while the master states that the libelant jumped up at once, using abusive language, with the exclamation, "I will drop your guts on deck," and started for the kitchen, which was a step away, and that he merely kept the man pinioned by grasping his wrists to prevent his move to the kitchen. Under either version it thus appears that the difficulty originated in gross insubordination on the part of the libelant, for which no explanation is offered by him, as he claims he had not been drinking, although the master and other witnesses testify that he appeared to be "in liquor"; and, upon the libelant's statement, the only issue presented is whether the conduct of the master, after the way was cleared, in either view, (1) was abusive and wanton, and exhibited excessive violence against the libelant; and, if it so appears, (2) was the proximate cause of the paralysis from which he is suffering. With the issue so narrowed, I deem it neither necessary nor instructive to review the testimony in detail, and rest the decree upon the following deductions therefrom: (1) The libelant's testimony that he was first seized by the neck when he started for the galley, and then choked and thrown against the ice box, dragged against the rail, and thus severely injured while so held, is not confirmed by any other circumstances or by marks of injury, and is difficult to reconcile with the conceded fact that he was finally held by the wrists to prevent him from reaching the galley, all within the contracted space of two or three feet at the utmost. (2) The testimony of the master that he used no force or violence, other than holding the man by the wrists to prevent his reaching the galley and its supply of cutlery, is consistent with the authenticated facts, and confirmed by the attitude of the parties as witnessed by the second cook and the engineer, and by the absence of heat or anger in the appearance of the master, as attested by all the other witnesses. (3) The conceded conduct of the libelant when released by the master, following his call to the second cook for his kitchen knife, tends to confirm the master's statement of threats, and clearly justifies the exercise of reasonable force to prevent the threatened or even probable action of the angry and insubordinate man,—conduct which shows uncontrolled passion on the part of the libelant, and both threat and effort to cut the master with a long knife, followed up by chasing the latter, brandishing the knife in one hand and loaded revolver in the other, with crazy abuse and threats. (4) And, finally, upon the issue of excessive force, it is clear that the testimony does not preponderate in favor of the libelant in respect of apparent credibility. (5) The question of proximate cause does not arise, on the

view indicated, but it may well be remarked that the testimony shows no appearance of injury from the alleged assault on that day or during the following day, except an abrasion of the hand which occurred in the struggle to reach the galley, and nothing to indicate physical hurt which would tend to produce the paralysis which appeared after the libelant's arrival by steamer on the second day thereafter in Milwaukee; and, taking into account the testimony of his prior condition, it seems improbable, if not impossible, to attribute that condition to an injury inflicted by the master, notwithstanding the guarded expression of opinion by his attending physician. I am of opinion that the libel must be dismissed, and it is so ordered.